IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br> vs.<br><br>JUAN F. CASTANO,<br><br>    Defendant. | 8:15CR27<br><br>MEMORANDUM AND ORDER |

   This matter is before the Court on the Findings and Recommendation (Filing No. 33), issued by Magistrate Judge F.A. Gossett recommending that the Motion to Suppress Evidence and Statements (Filing No. 24) filed by the Defendant, Juan F. Castano ("Defendant"), be denied. Defendant filed an Objection to the Findings and Recommendation and a brief in support (Filing Nos. 37 and 38) as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 59.2(a). The Government did not respond to the Defendant's Objection. For the reasons set forth below, the Findings and Recommendation will be adopted, and the Motion to Suppress will be granted in part and denied in part.

## BACKGOUND

   Defendant is charged with knowing possession of a stolen firearm, in violation of 18 U.S.C. §§ 922(j)(l) and 924(a)(2), and being an unlawful user or person who is addicted to any controlled substance in possession of one or more firearms, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). The Defendant moves to suppress all evidence derived from a traffic stop, arrest, and subsequent searches of his person and the truck he was driving on December 6 and 7, 2014. The Defendant also moves the

Court to suppress statements made inside the Morrill County Sheriff's Office on December 6, 2014, during the booking process.

On December 6, 2014, the Defendant was driving a pickup truck that was stopped by the then-Chief of the Bridgeport Police, David Hunt IV ("Chief Hunt"). (Transcript of June 10, 2015 hearing ("Tr."), Filing No. 36 at 8:23-24.) Chief Hunt stopped the truck because he knew that the Defendant had an outstanding arrest warrant. (Tr. at 8:16-17.) The Defendant pulled his truck into the parking lot of a local restaurant, got out of the truck, and spoke to Chief Hunt for a few minutes. (Tr. at 18, 19.) Chief Hunt testified that during the stop he observed a brown rifle case in the cab of the Defendant's truck. (Tr. at 12:8-12.) Chief Hunt notified the Defendant of the warrant for his arrest. (Tr. at 19:19-20.) The entire stop lasted less than four to five minutes. (Tr. at 19:16-17.) Chief Hunt testified that he knew "immediately upon the stop," that the Defendant's truck would have to be towed. (Tr. at 15:12, 15.)

After the Defendant's arrest, Chief Hunt drove the Defendant to the Morrill County Sheriff's Office to be booked, leaving Defendant's truck in the parking lot. (Tr. at 9:14-15; 19:19-20.) During the booking process, Chief Hunt learned from the county sheriff that the Defendant had made a statement about a rifle being in his truck. (Tr. at 11:10-11.) Chief Hunt then returned to the restaurant parking lot and began to inventory the Defendant's truck. (Tr. at 11:10-11.) Chief Hunt initiated his search with the sealed, brown gun case he had seen earlier. (Tr. at 11:22-24.) Inside the case, Chief Hunt found a youth model Winchester .22 rifle that he suspected to be stolen. (Tr. at 11:24-12:2.) At the same time he saw the rifle case, Chief Hunt noticed a pipe in the console

2

and he stopped searching. (Tr. at 12:3-4.) Chief Hunt then drove the truck to a secure location and applied for a search warrant. (Tr. at 25:20-21.)

The stated basis for the warrant was:

> 3. On the afternoon of Friday December 6, 2014, I, Chief David Hunt IV of the Bridgeport Police Department observed a dark green Dodge Dakota pickup, license plate #64-707 traveling with its window rolled down. The registered owner of the vehicle was Juan F. Castano . . . . I am familiar with Juan F. Castano through previous contacts. Through the open window I recognized Castano to be the driver of the vehicle.
>
> 4. I was aware that there was an active arrest warrant for Castano for two (2) counts of Distribution of Methamphetamine, which was signed by Judge Paul Wess on November 12, 2014. I instituted a traffic stop on the vehicle. Pursuant to the traffic stop Castano pulled into the parking lot of BurgerWerx, a restaurant located on Main Street in Bridgeport, Morrill County, Nebraska. Following the traffic stop I subsequently placed Juan F. Castano under arrest pursuant to said arrest warrant.
>
> 5. During the booking of Castano, while he was in the booking room, he was found to have on his person a white powdery substance that was identified by a field test to be methamphetamine. During the booking Castano advised there was a rifle in his vehicle. After the booking of Castano, I proceeded to begin inventorying the vehicle.
>
> 6. During the inventory of the vehicle I observed a rifle in a brown rifle case that matched the description of a rifle previously reported to have been stolen. I further observed in the center console a pipe, which through my training and experience, I believed to be a pipe commonly used to inhale methamphetamine and/or marijuana. At this point, I secured the vehicle, transported it to a secure location, and decided to seek a search warrant for the vehicle.

(Defendant's Exhibit 101 ¶¶ 4-6.)

Chief Hunt obtained a search warrant on these grounds and searched the truck again the following day and located the rifle and the pipe. (*See* Inventory of Vehicle, Government's Exhibit 3.) Hunt also found a BB gun, a pellet gun, and some small packages of white crystal inside a vitamin bottle. (*See* Inventory of Vehicle, Government's Exhibit 3.)

3

A hearing on the Defendant's Motion to Suppress took place on June 10, 2015. Chief Hunt was the lone witness. Judge Gossett found that the Bridgeport Police Department towing policy (the "Towing Policy") "is not a standardized inventory policy." (Tr. at 53:22-23.) Judge Gossett concluded, however, that "there was an inventory policy, although not in detail, but sufficient enough to cover the circumstance of this case[,]" and specifically found that there was no standardized police procedure regarding the opening of containers. (Tr. at 56:16-17; 57:11-15.) Judge Gossett concluded that the search "continue[d] on as an inventory until the very end." (Tr. at 54:16-17.) Judge Gossett noted that even if it was not a valid inventory search, "there certainly was probable cause, based upon the finding of the gun, for the search warrant to issue." (Tr. 54:18-20) Judge Gossett further found "that the good faith exception of [*United States v.*] *Leon* applies here and Chief Hunt could rely upon the search warrant." (Tr. at 56:7-9.) Judge Gossett also noted that the inevitable-discovery exception may apply to this case. (Tr. at 56:12-13.)

## STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(C), the Court must make a de novo determination of those portions of the findings and recommendation to which the Defendants have objected. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendation. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

**I.      Statements at Booking**

Judge Gossett found that the Defendant did not receive his rights under *Miranda* at any relevant time. Judge Gossett noted that the Government failed to demonstrate

4

that any exception to *Miranda* applied in this case. The Government has not objected to this finding, nor has it objected to Judge Gossett's recommendation that statements made by the Defendant at booking should be suppressed. The Court has reviewed the evidence and record in this case and agrees with Judge Gossett. Accordingly, the Court will adopt Judge Gossett's recommendation that any statements made by the Defendant during the booking process will be suppressed.

**II.   Inventory Search**

Judge Gossett noted that Chief Hunt discovered the gun as part of an inventory of the Defendant's vehicle. "The police are not precluded from conducting inventory searches when they lawfully impound the vehicle of an individual that they also happen to suspect is involved in illegal activity." *United States v. Harris*, -- F.3d --, No. 14-3234, 2015 WL 4557226, at *2 (8th Cir. July 29, 2015) (quoting *United States v. Pappas*, 452 F.3d 767, 771 (8th Cir. 2006)). "Rather, when police are conducting 'inventory searches according to such standardized policies, they may keep their eyes open for potentially incriminating items that they might discover in the course of an inventory search, as long as their sole purpose is not to investigate a crime.'" *Id.* (quoting *United States v. Marshall,* 986 F.2d 1171, 1176 (8th Cir. 1993)).

The Court concludes that Chief Hunt's initial search of the truck was a valid inventory search. The Government's Exhibit 1 is the Bridgeport Police Department's towing policy (the "Towing Policy"). The Towing Policy provides officers with discretion to have a vehicle towed for several reasons including: general safety, a vehicle impeding traffic, a vehicle parked in a restricted area, or upon arrest of the operator. In circumstances where a driver has been arrested, standard operating procedure allows

officers generally to turn over a vehicle to a passenger, if the driver gives consent and the passenger is eligible to drive. If not, the Towing Policy requires officers to inventory the vehicle being impounded as a result of the driver's arrest, complete an inventory of the vehicle, and fill out an inventory report form. There is no evidence suggesting Chief Hunt significantly deviated from the Towing Policy when he began to inventory the vehicle. Further, there is no evidence that Chief Hunt's sole purpose in conducting the inventory search was to discover incriminating items. As soon as Chief Hunt realized the inventory search might yield incriminating items, he ceased the search to obtain a search warrant. Accordingly, Judge Gossett did not err in concluding that Chief Hunt properly commenced an inventory search of the truck.

The Defendant argues that even if it was a valid inventory search, Chief Hunt strayed from Bridgeport Police Procedure when he opened the gun case and discovered the gun that Chief Hunt suspected might be stolen. The Defendant argues that in the absence of a department policy governing the opening of closed containers during an inventory search, Chief Hunt was constitutionally prohibited from opening the gun case. *See Florida v. Wells,* 495 U.S. 1, 4-5 (1990) (concluding that because "the Florida Highway Patrol had no policy whatever with respect to the opening of closed containers encountered during an inventory search" the search was "not sufficiently regulated to satisfy the Fourth Amendment and that the [contraband] which was found in the suitcase, therefore, was properly suppressed . . . ."). For the reasons discussed below, the Court need not determine whether Chief Hunt could open the gun case as a valid part of his inventory search, because he obtained a warrant and discovery of the rifle was inevitable.

### III.   Good Faith Exception

Even assuming it was not constitutionally permissible for Chief Hunt to open the gun case as part of his inventory search, the warrant leading to the search of the vehicle was obtained in good faith. "The Fourth Amendment commands that no warrants shall issue, but upon probable cause, supported by Oath or affirmation." *United States v. Jackson,* 784 F.3d 1227, 1231 (8th Cir. 2015). Under the good-faith exception, evidence seized pursuant to a search warrant, even if the warrant is later determined to be invalid, "will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable. The court must look at the objectively ascertainable question of whether a reasonably well trained officer would have known that the search was illegal despite a judge's issuance of the warrant." *Id.*; *see generally United States v. Leon,* 468 U.S. 897, 920-21 (1984). The good-faith exception does not apply in four situations:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge;
>
> (2) when the issuing judge "wholly abandoned his judicial role" in issuing the warrant;
>
> (3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and
>
> (4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid.

*Id.* (quoting *Leon,* 468 U.S. at 923).

Although the Defendant did not expressly attack the affidavit under *Franks v. Delaware*, 438 U.S. 154 (1978), the Court looks to whether the affidavit supporting the warrant application contained false and misleading statements or omitted material facts

7

to determine whether the affidavit intended to mislead the issuing judge. *United States v. Conant*, -- F.3d --, No. 14-3158, 2015 WL 5023715, at *5 (8th Cir. Aug. 26, 2015) (citing *United States v. Puckett,* 466 F.3d 626, 629-30 (8th Cir. 2006)). For an affidavit to be false and misleading, it must be shown "that a false statement was included in the affidavit knowingly and intentionally or with reckless disregard for its truth, and that the affidavit's remaining content is insufficient to establish probable cause." *United States v. Puckett*, 466 F.3d 626, 629 (8th Cir. 2006) (internal marks and citation omitted). "Allegations of negligence or innocent mistake are insufficient." *Id.* (quoting *Franks,* 438 U.S. at 171).

There is no indication in the record that the affidavit supporting the warrant contained false or misleading information. As the basis for Chief Hunt's affidavit supporting his request for a warrant to search the Defendant's truck, Chief Hunt noted that he knew the Defendant and the Defendant had an active arrest warrant for dealing methamphetamine. Chief Hunt referenced the Defendant's statements at the station and his own finding of the allegedly stolen rifle during the inventory search. Chief Hunt also stated that he noticed a pipe in the center console of the pickup truck that, in his training and experience, was used to inhale methamphetamine and marijuana.

Even assuming Chief Hunt's references to the rifle and un-Mirandized statements were constitutionally deficient, the affidavit contains sufficient information to establish probable cause. "Probable cause to issue a search warrant exits if there is 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Donnell*, 726 F.3d 1054, 1056 (8th Cir. 2013) *cert. denied,* 134 S. Ct. 943 (2014) (quoting *Illinois v. Gates,* 462 U.S. 213, 238 (1983)). Even without the in-

custody statements and evidence of the gun, Chief Hunt could still rely on the fact that the Defendant had an active arrest warrant for dealing methamphetamine and that Chief Hunt observed a pipe for smoking marijuana and/or methamphetamine during the inventory search. *See United States v. Fladten,* 230 F.3d 1083, 1086 (8th Cir. 2000) (observation of "an item commonly used in the manufacture of methamphetamine . . . in plain view in the back seat" of an automobile gave officers probable cause to search other parts of the automobile for further contraband or evidence); *United States v. Munoz*, No. 4:08-CR-3069, 2008 WL 5069822, at *4 (D. Neb. Nov. 21, 2008) *aff'd,* 590 F.3d 916 (8th Cir. 2010) ("The discovery of drug paraphernalia (even without any drug residue) provides probable cause to search the entire automobile in which the paraphernalia were found for the presence of controlled substances."). Thus, even if some statements were improper, the remaining content of the affidavit supported a finding of probable cause. Accordingly, the affidavit supporting the warrant did not contain a knowing or reckless false statement.

  There is no indication in the record that the judge issuing the search warrant abandoned his role to independently determine probable cause. Nor was it entirely unreasonable for Chief Hunt to believe that the search warrant was supported by probable cause. As noted above, Chief Hunt's conduct in initiating the inventory search was not clearly illegal. Chief Hunt observed the pipe in plain view during his inventory search. Even if aspects of the inventory search were improper, Chief Hunt's "pre-warrant police conduct was 'close enough to the line of validity to make the officers' belief in the validity of the warrant objectively reasonable.'" *United States v. Conner*, 127 F.3d 663, 667 (8th Cir. 1997) (quoting *United States v. White,* 890 F.2d 1413, 1419 (8th

Cir.1989)). Finally, there is no evidence that the search warrant itself was facially deficient. Accordingly, the *Leon* good-faith exception applies to Chief Hunt's affidavit and the search warrant issued.

## IV. Inevitable Discovery of the Rifle

Because the *Leon* good-faith exception applies to the search warrant, the Court concludes that the rifle itself would have been discovered. "If the government 'can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . [then] the evidence should be received.'" *United States v. Allen*, 713 F.3d 382, 387 (8th Cir. 2013) (quoting *Nix v. Williams,* 467 U.S. 431, 444 (1984)). "For that exception to apply the government must show (1) a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) an active pursuit of a substantial, alternative line of investigation at the time of the constitutional violation." *Id*. (citing *United States v. Conner,* 127 F.3d at 667).

The Government has met both prongs in this case. At the time Chief Hunt discovered the rifle, law enforcement "was pursuing an 'alternative' investigation, that is, for something other than the gun which was discovered." *Munoz*, 2008 WL 5069822, at *3 (D. Neb. Nov. 21, 2008) *aff'd*, 590 F.3d 916 (8th Cir. 2010). This is evidenced by the fact that the Defendant was under arrest and in custody for dealing methamphetamine at the time the rifle was discovered. Further, Chief Hunt obtained the search warrant based in part on the Defendant's arrest warrant and the presence of drug paraphernalia in the truck. Also, the valid search warrant for investigation into the drug paraphernalia

provided Chief Hunt with the right to search the entire vehicle, including the gun case. Thus, discovery of the rifle was inevitable.

## CONCLUSION

For the reasons discussed, the Findings and Recommendation will be adopted, and the Motion to Suppress will be denied.

IT IS ORDERED:

1. The Findings and Recommendation (Filing No. 33), are adopted;

2. The Motion to Suppress (Filing No. 24) filed by the Defendant, Juan F. Castano, is denied; and

3. The Defendant's Objection to the Findings and Recommendation (Filing No. 37) is overruled.

Dated this 8th day of September, 2015

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge